## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | ) CRIMINAL CASE NO. **CM0511-20** |
| | ) GPD REPORT NO. 20-32293 |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **DECISION & ORDER** |
| | ) **RE. PEOPLE'S MOTION TO REVOKE** |
| | ) **DEFENDANT'S PROBATION** |
| **JOSEPH KENSTER EHDER** *aka* | ) |
| **Joseph Ken Ehder;** *aka* **Joseph Kenster** | ) |
| **Elider,** | ) |
| DOB: 11/22/1991 | ) |
| | ) |
| Defendant. | ) |

This matter came before the Honorable Maria T. Cenzon on April 3, 2026, for a Revocation Hearing. Defendant Joseph Kenster Ehder ("Defendant") was present with counsel Peter Sablan. Assistant Attorney General Martin Remming was present for the People of Guam ("People"). During the hearing, the Court heard the parties' arguments on the People's Motion to Revoke the Defendant's Probation ("Motion to Revoke"). Following the hearing, the Court took the matter under advisement pursuant to Supreme Court of Guam Administrative Rule 06-001, CVR 7.l(e)(6)(A) and CR 1.1 of the LOCAL RULES OF THE SUPERIOR COURT OF GUAM. Having duly considered the parties' briefings, oral arguments, and the applicable law, the Court now issues this Decision and Order **GRANTING** the People's Motion to Revoke the Defendant's Probation.

## BACKGROUND

The Defendant was charged with Family Violence (As a Misdemeanor) and Resisting Arrest (As a Misdemeanor) on December 26, 2020. *See* Magis. Compl. (Dec. 26, 2020). On November 22, 2021, the Defendant entered a Deferred Plea of Guilty to Family Violence (As a Misdemeanor). *See* Order After Hearing (Dec. 2, 2021). The Court deferred acceptance of the Defendant's guilty plea for one year and ordered the Defendant to comply with the terms of the Deferred Plea Agreement. *Id.* at 1–2. As part of the Deferred Plea Agreement, Defendant acknowledged and understood that the maximum sentence for misdemeanor family violence is one year of incarceration and up to a $1,000 fine. *See* Deferred Plea Agreement at 1 (Dec. 2, 2021). The Agreement also required the Defendant to report to Client Services and Family Counseling ("CSFC") for intake and assessment; follow all treatment recommendations, including behavioral-health programming through Guam Behavioral Health and Wellness Center ("GBHWC"), if recommended; check in with Probation once a month or as determined by Probation; pay $80 in court costs; complete an alcohol assessment at New Beginnings and follow treatment recommendations; submit to drug and alcohol testing as determined by Probation; obey all federal and local laws; surrender firearms and firearms permits; and refrain from harassing, assaulting, or threatening the victim. *Id.* at 1–2. *See also Order After Hearing (Deferred Plea Agreement Entered]* (Dec. 2, 2021).

The Order After Hearing further provided that if the Defendant failed to comply with the Deferred Plea Agreement, and if the Court found that he violated its terms, the Court could accept and enter the Defendant's guilty plea and sentence him accordingly. *Order After Hearing* at 2. However, if the Defendant faithfully complied with the terms and conditions of supervision, the case would be dismissed and the arrest expunged from the Defendant's record. *Id.*

## A. The Defendant's multiple violations during deferred probationary supervision

During the Defendant's term of supervision, the Probation Services Division ("Probation") filed four violation reports. Probation also filed an informational report after the Defendant was indicted in a separate felony case, Superior Court of Guam Case No. CF0194-25. *Informational Report Re: New Arrest* (Mar. 31, 2025).

For the first violation, Probation reported that the Defendant failed to complete an intake and assessment with CSFC; failed to complete an intake and assessment with GBHWC; failed to make any payments toward his $80 court cost balance in accordance with his payment plan; and failed to report monthly to Probation as ordered in December 2021 and January 2022. *First Violation Report* (Feb. 7, 2022). He had last reported to Probation on November 23, 2021. *Id.*

For the second violation, Probation reported the same allegations contained in the First Violation. *Second Violation Report* (Aug. 26, 2022). Specifically, Probation informed the Court that Defendant had not yet completed an intake and assessment with either CSFC or GBHWC; had made no payments toward his $80 court cost balance; and had still not reported to Probation since November 23, 2021. *Id.* The Court issued a warrant of arrest based on the second violation, with bail affixed at $2,000. *Warrant of Arrest* (Sep. 1, 2022). After the Defendant's return on the warrant, the Court imposed a one-day sentence as a sanction, ordered the Defendant to check in with Probation on release, and extended his probationary period to September 20, 2024. *Minutes of Hr'g on Return of Warrant of 9/21/2023* at 2:31:12 PM to 2:33:15 PM (Sep.21, 2023).

For the third violation, Probation reported that the Defendant:

Failed to report weekly in person to the Probation Office. The defendant last reported on September 22, 2023. Attempts to contact the defendant via phone on October 11, 12, and 17, 2023 have been unsuccessful. A home visit was conducted on October 16, 2023 at 202 Maite Plaza Robat Street, Maite. A notice was posted on apartment 202 which stated the occupants were not tenants and must leave the unit.

*Third Violation Report* (Oct. 20, 2023). The Court issued a warrant on the third violation, with bail affixed at $500. *Warrant of Arrest* (Jan. 16, 2024). The warrant was outstanding for over one year. Finally, on February 11, 2025, a Return of Warrant Hearing was held, and the Defendant was released the same day with orders to report to probation and to complete his conditions of probation. *Minutes of Hr'g on Return of Warrant of 2/11/2025* at 10:05:38 AM to 10:06:07 AM (Feb. 11, 2025). Specifically, the Court ordered the Defendant to report to Probation, complete an assessment with CFSC and GBHWC, and extended his term of probation for another year to February 10, 2026. *Id.* at 10:03:21 AM to 10:06:07 AM.

Despite the repeated instructions and multiple chances given to the Defendant, a Fourth Violation was filed wherein Probation reported that the Defendant:

> Failed to report to the Probation Office upon his release from the Department of Corrections on February 11, 2025. The defendant was instructed by the Court to report to the Probation Office no later than 10 am on February 12, 2025 but failed to report. According to a male individual, the defendant does not reside at 135 Pugua St. Mangilao (the location where the defendant was picked up on a warrant on January 29, 2025).

*Fourth Violation Report* (Feb. 19, 2025). The Court issued yet another warrant of arrest, with bail affixed at $2,000. *Warrant of Arrest* (Mar. 7, 2025).

On March 31, 2025, Probation filed an Informational Report advising the Court that the Defendant had been indicted in a new case, Criminal Case No. CF0194-25. *Informational Report Re: New Arrest* (Mar. 31, 2025). The report stated that the Indictment charged the Defendant with Complicity to Commit Aggravated Murder (As a First Degree Felony), Complicity to Commit Murder (As a First Degree Felony), Complicity to Commit Arson (As a Third Degree Felony), Complicity to Commit Obstructing Government Function (As a Misdemeanor), and Complicity to Commit Destruction of Evidence (As a Misdemeanor), and that the Defendant had been committed on $100,000 cash bail in that matter. *Id.*

The People filed the instant Motion to Revoke on April 4, 2025. The Defendant filed his Opposition to the Motion for Revocation of Probation ("Opposition") on April 29, 2025. The Defendant argued that probation serves a rehabilitative purpose; that revocation should be a last resort; that he had not harassed, assaulted, or threatened the victim in this case since the underlying 2020 incident; and that treatment in the community would be more effective than confinement. Opp'n at 1–3 (Apr. 29, 2025). He requested another opportunity to complete probation. *Id.* at 3.

A Revocation Hearing was held on April 3, 2026. The People argued *inter alia* that the Defendant had made no progress on completing his conditions of probation since 2021, had not attended treatment, and had been charged in CF0194-25, for which he was detained at the DOC. *Revocation Hr'g Mins.* at 11:44:00 AM to 11:44:40 AM (Apr. 3, 2026). The Defendant requested dismissal and expungement and stated that it was difficult for him to get around. *Id.* at 11:44:51 AM to 11:46:04 AM. After hearing the parties' arguments, the Court took the Motion under advisement. *Id.* at 11:47:49 AM.

## DISCUSSION

If the court finds that the Defendant has "inexcusably failed to comply with a substantial requirement imposed as a condition of the order," it may revoke probation and sentence or resentence the offender. 9 GCA § 80.66(a)(2). If a court chooses to revoke probation, the court may sentence the defendant to any sentence that it may have originally imposed. 9 GCA § 80.66(b). However, it shall not revoke probation for a defendant's violation of a condition unless the court determines that revocation "will best satisfy the ends of justice and the best interests of the public" under all circumstances. 9 GCA § 80.66(a)(2).

The Supreme Court of Guam held that "probation is a favor granted by the state, not a right to which a criminal defendant is entitled." *People v. Camacho*, 2009 Guam 6 ¶ 26 (quoting *Parker v. State*, 676 N.E.2d 1083, 1085 (Ind. Ct. App. 1997)). To revoke a defendant's probation, the court must make two determinations. First, the court must "make a factual determination that a violation of a condition of probation has actually occurred." *Id.* ¶ 27 (quoting *Parker*, 676 N.E.2d at 1085). If the violation is proven, then the court must "determine if the violation warrants revocation of probation." *Id.*

A. **The Defendant repeatedly violated the conditions of his probation by failing to report to probation and by failing to complete them.**

The standard for determining whether a probationer violated a condition of probation is that "the evidence and the facts be such as reasonably necessary to satisfy the judge that the probationer's conduct has not been as required by the conditions of probation." *Camacho*, 2009 Guam 6 ¶ 30 (quoting *People v. Angoco*, 1998 Guam 10 ¶ 7). When facing revocation, "the defendant bears the burden of showing an excuse for failure to comply with the condition." *Id.* (quoting *State v. Peters*, 609 A.2d 40, 43 (N.J. 1992)).

In this case, the Defendant accumulated four violation reports during his deferred probationary term. The Court can factually determine that the violations occurred after reviewing Probation's reports and the Court's own record of events, as well as the Defendant's admissions to the violations during each violation hearing or return of warrant hearing. The Deferred Plea Agreement required the Defendant to report to CSFC for intake and assessment, follow treatment recommendations, check in with Probation once a month or as determined by Probation, pay $80 in court costs, undergo an alcohol assessment at New Beginnings, obey all laws, and refrain from harassing, assaulting, or threatening the victim. The violation reports establish that the Defendant failed to complete the CSFC and GBHWC intake assessments, failed to make any payments

toward court costs, and failed to report to Probation for extended periods, including immediately following the Court's order to do so each time his warrants of arrest were canceled.

The Defendant did not materially dispute the core reporting and treatment violations. Indeed, he had admitted to each instance of the violations. Instead, his written Opposition requested another opportunity to complete probation, and at the April 3, 2026 hearing, the Defendant stated that it was difficult for him to get around. That explanation does not excuse the full course of noncompliance reflected in the record. The Defendant stopped reporting almost immediately after the Deferred Plea Agreement was entered; he remained noncompliant through the second violation; he failed to report weekly after the Court gave him another opportunity and extended supervision; and he again failed to report after being released from confinement in February 2025, in blatant violation of the Court's oral order and admonishment. Based on the violation reports, Probation's statements at the Revocation Hearing, and the parties' arguments, the Court finds that the Defendant violated multiple conditions of his probation on several occasions.

## B.     The Defendant's violations warrant revocation of probation.

With regard to probation revocation, the Supreme Court of the United States has noted that "the State clearly has an interest in punishment and deterrence, but this interest can often be served fully by alternative means . . . [T]he state is not powerless to enforce judgments against those financially unable to pay a fine. For example, the sentencing court could extend the time for making payments, or reduce the fine, or direct that the probationer perform some form of labor or public service in lieu of the fine." *Bearden v. Georgia*, 461 U.S. 660, 671–72 (1983) (internal citations and quotations omitted).

As mentioned earlier, the Court may revoke probation if it finds that the probationer has "inexcusably failed to comply with a substantial requirement imposed as a condition of the order." 9 GCA § 80.66(a)(2). In other words, a probationer's violation warrants revocation when the violation upsets the intent of the probation conditions. In *Camacho*, the Supreme Court of Guam held that the probationer's failure to report for drug testing was serious enough to warrant revocation because the violated condition related directly to treatment. *Camacho*, 2009 Guam 6 ¶ 32. Although the defendant in *Camacho* also failed to pay a fine, the Supreme Court reasoned that failure to pay alone was not as serious as failing to report for drug testing where the defendant had been convicted of drug-related offenses and drug testing was imposed to ensure sobriety. *Id.*

Here, the Court does not revoke probation based on the Defendant's nonpayment of court costs alone. The Court is mindful that the Deferred Plea Agreement did not impose the $1,000 maximum fine, and the Court noted at the hearing that the Defendant's remaining financial obligation was the $80 in court costs. The more substantial violations are the Defendant's repeated failures to report to Probation and to complete the intake and treatment requirements that were central to the Deferred Plea Agreement. Those reporting and treatment conditions were not technical formalities. They were the mechanisms by which Probation could monitor the Defendant, connect him with services, ensure compliance with family-violence-related treatment requirements, and protect the victim and the public while giving the Defendant the opportunity to earn dismissal and expungement of this case.

The Defendant requested continued probation, citing rehabilitation and arguing that confinement should be a last resort. Opp'n at 1–3. The Court agrees that probation is intended to promote rehabilitation where possible. But rehabilitation through probation requires the Defendant to maintain contact with Probation and *actually* participate in the services ordered by

the Court. The record shows the opposite. The Defendant failed to report monthly soon after the Deferred Plea Agreement was entered; failed to complete the initial assessments necessary to begin treatment; failed to report from December 2021 through July 2022; failed to report weekly after supervision was extended; could not be reached by phone or located during a home visit in October 2023; and failed to report immediately after his February 2025 release despite a direct order from the Court.

The Court also provided the Defendant with multiple opportunities short of revocation. The Court deferred acceptance of his guilty plea, released him after prior warrant proceedings, directed him to check in with Probation, extended his probationary period, and continued the June 27, 2025, revocation hearing while ordering him held to receive credit. Despite those opportunities, the Defendant had made no meaningful progress on the conditions that remained central to the Deferred Plea Agreement. At the April 3, 2026, hearing, the People argued that the Defendant had made no progress since 2021, had not attended treatment, and was charged in a new case, Criminal Case No. CF0194-25, for which he was facing serious charges and was detained at DOC. The Court does not adjudicate the pending charges in CF0194-25 in this Decision and Order; nevertheless, the pending prosecution and the Defendant's continued detention in that case reinforce the Court's conclusion that, even if the Court were to grant him another opportunity to complete the conditions of his Deferred Plea Agreement, he would be unable to do so due to his continued confinement in the new case.

Unless the Court determines that revocation "will best satisfy the ends of justice and the best interests of the public" under all circumstances, the Court shall not revoke probation for violating a probationary condition. 9 GCA § 80.66(a)(2). Here, the Defendant's repeated reporting and treatment violations defeated the rehabilitative purpose of the Deferred Plea

Agreement and left Probation unable to supervise him effectively. The Court has attempted lesser alternatives over a period of years, but the Defendant has not complied with the basic conditions necessary for probation to function. The Defendant's violations therefore warrant revocation.

Because the Defendant has inexcusably failed to comply with substantial conditions of his probation, the Court finds that revocation of the Defendant's probation will best satisfy the ends of justice and the best interests of the public. Therefore, the Court grants the People's Motion to revoke the Defendant's probation.

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** the People's Motion to Revoke the Defendant's Probation and **REVOKES** the Defendant's probation in the above-captioned matter. The Defendant is **SENTENCED** to serve **ONE (1) YEAR** of incarceration at the Department of Corrections, Mangilao, and shall receive credit for time already served in this matter. The Defendant asks this Court to commit him *nunc pro tunc* to the date on which he was confined in CF194-25. The Court **DENIES** this request.

The Court shall issue a Judgment concurrent with this Decision and Order revoking the Defendant's probation, accepting and entering the Defendant's guilty plea and conviction, and imposing the one-year sentence.

**SO ORDERED** this 29th day of July, 2026.

**HONORABLE MARIA T. CENZON**
Judge, Superior Court of Guam